OPINION OF THE COURT
Stuart Namm, J.
This is a special proceeding under section 121 of the Agriculture and Markets Law. The complainant avers that the dog which is owned by the respondent, a male with the body structure of a German Shepherd type, is a dangerous dog within the meaning of the law, and seeks to have the animal permanently confined or destroyed.
While there was some question during the hearing as to the identification of the animal in question, it was clear to the court that the Golden Labrador-Malemute mixed breed *191 dog conceded to have been owned by the respondent, and named “Jimbo”, was the animal which is the subject of these proceedings.
Testimony, in support of the complaint revealed that on two separate occasions, the animal, which weighs between 75 and 100 pounds, while running loose and unattended, attacked the complainant’s 16-year-old son in a menacing manner as he was riding his bicycle, “barking * * * growling *** and snarling.” The first incident caused the young man to fall from his bicycle and to injure his leg and knee. On the second occasion, the dog was one of a pack of three dogs which forced the young man to take defensive action against the animals in order to protect himself from what he perceived to be an impending attack.
In opposition, the respondent presented evidence that his dog is usually confined in a kennel or secured by means of a chain, although admittedly sometimes loose and “perhaps a little rough *** playful * * * and goes after bikes”. Two neighbors, who testified in support of the respondent, indicated that they never observed any vicious acts by the dog, and that the dog is usually confined or attached to a lead, but that on occasion the dog “escapes”.
Section 121 of the Agriculture and Markets Law provides in pertinent part as follows:
“1. If any dog shall attack any person who is peaceably conducting himself in any place where he may lawfully be * * *
“3. Any person may make a complaint of an attack upon a person * * * to a dog control officer ***
“4. Any person may *** make a complaint under oath or affirmation to any municipal judge or justice of such attack *** Thereupon, the judge or justice shall immediately determine if there is probable cause to believe the dog is a dangerous dog *** he shall * * * hold a hearing on the complaint. If satisfied that the dog is a dangerous dog, the judge or justice shall then order the owner or any dog control officer [or] peace officer * * * to destroy the dog immediately, or shall order the owner to confine securely such dog permanently or at such time as otherwise specified in the order. If the owner fails to destroy or to confine *192 the dog as required by such order, any dog control officer [or] peace officer * * * shall destroy such dog on or off the premises of the owner.”
There is ample precedent for the ordered destruction or permanent confinement of a dog whose attacks culminate in a biting incident. However, the question of whether a dog which attacks a person, but does not bite the victim, on a public way, as opposed to private property, can or should be so treated, appears to remain unanswered in this jurisdiction.
Matter of LaBorie v Habes (52 Misc 2d 768, 769) involved an animal which entered upon the property of the petitioner on three separate occasions, approaching “her with growls and bared teeth.” There, as in the instant case there was no evidence of biting. However, the court (supra, p 770), referring to a person’s inherent right to use his own property “immune from hostile assaults” ordered the dog confined by the respondent. There, as here, the dog in question was found to be friendly to others and playful with children.
The standard, however, as set forth by the Legislature, is not whether the animal is friendly to some, or even to most, persons, but whether it attacks even one person who is conducting himself in any place where he may lawfully be. While the statute fails to define “attack”, the Oxford English Dictionary (Oxford University Press, 1971) defines “attack” in reference to animals as: “The commencement of destructive * * * action” (emphasis added). Such definition, coupled with that work’s definition of “dangerous” as “Fraught with danger or risk perilous, hazardous, risky, unsafe”, provides the key to the legislative intent and the standard by which a court can declare a dog to be dangerous within the meaning of the statute. An attack need not culminate in the ultimate hostile contact between dog and human — the bite — for a dog to be declared dangerous. It is the action of the animal which gives rise to apprehension on the part of a reasonable person that such contact is imminent which is proscribed by the statute. To require more would be to revive the “one free bite” rule which has long since been rejected in this jurisdiction (Muller v McKesson, 73 NY 195). A person *193 need not wait till he or she is injured or maimed before taking defensive action against a menacing animal, nor need a court look to such injury before ordering the actions which are authorized by statute.
In a free society, there is a constant balancing of freedoms and privileges in order to insure that the exercise of a privilege by one does not infringe upon the freedom of another. The privilege to keep a domestic animal carries with it the obligation to insure that the actions of that animal — as friendly as they may appear to the owner — do not interfere with the ordinary rights of another, i.e., to safely use a public roadway unhindered by a loose dog. This, especially where permitting such dog to run loose constitutes a violation of a local ordinance. In this case, the Town of Islip has seen fit to adopt a local law making it a punishable offense to permit a dog to run at large (Islip Town Code, § 12-2 [a]). It is indefensible to assert that other dogs are permitted to run loose in the neighborhood in violation of the aforesaid ordinance.
While this dog’s conduct certainly does not warrant the most extreme action sanctioned by section 121 of the Agriculture and Markets Law, the two incidents at issue do warrant the permanent confinement of this animal. Accordingly, the respondent is hereby directed to secure or confine his dog at all times when he is not being walked at the end of a leash. If the respondent shall fail to comply with this direction, he shall do so at the risk of the most extreme sanction authorized by law, i.e., destruction of the dog.